Good morning. We're going to start today with a motion for admission to the bar and for this I yield to my colleague Judge Plager as I'm going to be the one making the motion. Thank you. Good morning everyone. You are about to have a pleasure. Judge, do you have a motion to make? I do. I move for the admission of with the highest courts of California. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. I'm particularly pleased to make this motion today because Emily has served as my law clerk for over the past year. She has been an excellent law clerk. She has been consistently dedicated, diligent, thoughtful, driven and determined. She has been tremendously helpful in all aspects of our chambers and court operation and I'm very happy to have had her in chambers. I am confident that based on her experience with me she will serve admirably as a member of the bar. Well, with all that sounds like admission to the bar is not enough. Judge Clevenger, how do you feel about this motion? I feel very well about the motion. I'm delighted to join vote in favor of the motion. All right, we have a motion before us. It's been moved and seconded. I assume you'll recuse from voting so it'll be up to Judge Clevenger and myself. Judge Clevenger, how do you vote on the motion? Judge Clevenger votes yay. I think we have a majority. Excellent. Emily, please rise. Please raise your right hand. I yield the floor. Thank you. We have three cases on the calendar this morning. One patent case on appeal from the United States Patent and Trademark Office, one patent case from District Court and a veterans case from the U.S. And Mr. Molitors, whenever you're ready. May it please the court. I am Robert Molitors representing Appellant Advanced Marketing Systems and with my colleague Kurt Rommel assisting me at counsel's table. Principal issue in this appeal is one of claim construction which is reviewed de novo. Mr. Molitor, speak up just a little bit. Thank you, sir, Your Honor. As I say, the principal issue in this appeal is one of claim construction which is reviewed de novo and pertains to what is a select code as recited in Claims 9 of the 445 patent and Claim 15 of the 199 patent. What I'd like to explain is that the single select code must accomplish four functions. Four functions are permits tracking of the individual purchasers to purchase products and the prices and uniquely identifies all the discounts of the discounted vehicle and fourth uniquely identifies the vehicle. Again vehicle meaning the means as in a coupon. There can be many codes but at heart here is that there must be a single select code. So you agree there could be other kinds of codes? Sure, there could be all sorts of other ones, you know, customer ID, a date, an expiration or whatever. It makes no difference but there must be a single select code that does those four functions. I can see your argument more so with the claims that have the language exactly one select code but what about the other claims? Okay, yes, Claim 9, Your Honor, as you say, says exactly one. Claim 15 says a select code which given the prosecution history and especially as Claim 9 ended up that during prosecution to get over the Art Dixon was amended from a to a exactly one code but our contention is that Claim 15 as well refers to a select code as supported by the spec and as it's used. And in addition if we look at the two references that the board has relied on, the Nick Berger and Ovadia, that both of those references... AA ordinarily permits more than one? Correct. You are correct, Your Honor. However, if we look at... And the Claim 9 language is sort of awkward in the light of the fact that it follows a comprising... it's a comprising claim, right? That is correct and the board relied on Georgia-Pacific to distinguish between comprising and consisting. Comprising being open-ended, consisting not. However, later court cases as in Baldwin-Graphic and especially Harari versus Lee kept on going and looked at the the law and said when the specific discussion of that one can mean exactly one or just a single one that even in the context of an open-ended comprising claim it refers to one. What the board did... You could have said exactly one and only one and never more than one. I mean it's just odd because the claim was originally drafted as a comprising claim and then when you amend it during prosecution that you're stuck with a problem. You're right. I mean comprising is in the claim. However, by putting in exactly one and referring to only one throughout all of the prosecution history, it was meant to be a single one. And as I say in Harari when we talk about the history and the claims overriding the open-endedness of comprising, you cannot read or what the board has done is read out a specific limitation that we we need the single code or in again as I say to distinguish... Your argument is that neither Nextaverton and you view neither Nextaverton nor Avadia providing only one select code, right? Correct. And in fact the board found as fact in the final written decisions that both Nick Berger and Avadia required and relied on multiple codes to teach the four distinct functions of our single select code. Where the board erred is, I believe, in the comprising argument that was brought up. Suis Ponte had never been of the board. Well, assume you're right that the language requires only one select code, at least in claim nine, because of the language there. Why isn't it so that either Nick Berger or Avadia taught a single select code? Well, Nick Berger requires UPC code to identify the customer. The question would be is there a code in Nextaverton or Avadia that satisfies the four functions? No. Well, that's what you say. Isn't that where the rubber just hit the road? That's where the rubber hits the road, but the board also agreed that Nick Berger and Avadia required multiple codes, at least two, to do those four distinct functions. And that was again in the final written decisions that they said that the claim does not preclude the presence of other codes, such as Nick Berger's magnetic strip of the code on a customer's special card, and Avadia requires the presence of other codes, such as the Indicia 41. It can require the presence of other codes. The question is does it have a code that satisfies the four functions? Yes. I didn't hear you saying that. The fact that each of them have additional code doesn't mean that they can't have one that satisfies the four functions. It doesn't preclude that, but Nick Berger and Avadia use the multiple codes to do those four functions. So they don't have a single code on any of the I think the board recognized that fact, but sort of went astray and used the comprising argument against Uspante to say that it is okay to have multiple codes and read out the specific limitations that we require one code to do the four functions. I mean the other issue I'd like to discuss is also the phrase during the checkout process, which is in the preamble of both Claim 9. I'm going to ask about that. Would you talk to that please? I would be glad to. If you look at the preambles of both of those claims, they're exactly the same, and the preambles talk about a processing system for tracking and processing the plurality of discounts during the checkout process. And that's not a field of use argument, and I guess to put this in context, back in the late 90s and the early 2000s, fraud was a problem with couponing in the sense of I take my electronic coupon, I come up to the checkout register, I use my coupon, I get my discount, I can walk out the door and I can turn around and come right back in and use it again. And that was referred to as reusing a coupon. And so what is meant in the preamble is that all of these four functions must occur during that tracking and processing of the coupons during the checkout process. In fact, in the specification, and let me read you a short quote, it is yet another object of the present invention to provide an integrated promotion system that avoids retailer in-store post-redemption processing of coupons, which says I can't wait till later to process it because, in that example, a person could use a coupon, come back in and use it again, and fraudulently get an extra discount. And so the during the checkout process in the preamble of both claims says all of these four functions must occur during that checkout process. The board, if I understand it correctly, said that's not limiting, is that right? They did, they did. Are preambles ordinarily found to be limiting? Absolutely. In Summit 6, generally a preamble is not limiting. But in that case, they also cited to Catalina Marketing that says if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim, then it is limiting. And we contend... Does preamble do any of that? Absolutely. It gives the meaning and the vitality because the whole problem is that this process must occur during checkout. Or again, it doesn't make any sense. I understand you're relying primarily on the specification for that argument, saying that the specification is talking about how important it is that it be during the checkout process. But lots of times when you look at this question of whether something breathes life and breath into the body of the claim, it's kind of more of an antecedent basis. What do you have for antecedent basis with respect to this? Your Honor, you're absolutely correct. I mean, we're not relying on the antecedent basis as much as describing during the checkout process for the tracking and processing. But I agree. I would allow actual amendments of claims. I would fix that. But the reality is... The reality is not what it says. This is true. But that's why, again, I say since the preambles talk about tracking and processing during the checkout process, that again, the whole concept would fall apart if all of that does not occur during checkout. Mr. Molitors, you're into your rebuttal time. Would you like to save, preserve the rest of your time? I would like to save my time. Thank you very much, Your Honor. Thank you. May it please the Court. Stephen Kinnaird for the Appellees. I, too, will begin with the exactly one select code, a select code requirement. And I would point out first that this is a new argument raised in their reply brief. They now concede in their reply brief that the claim permits multiple codes as long as there's one select code. But it's the presence of multiple codes, not multiple select codes, to which the Board's comprising holding was directed. And by the way, that was not a new ground of rejection. We made the argument that the claim permits multiple codes and the Board just identified textual basis in the claim for that. They're now trying to switch horses in the reply brief and say that the Board failed to make the findings that the putative select code in Nick Berger and Ovadia performs all the functions of the code. And that is just simply not true, Your Honor. The Board in great detail, and this is at Appendix 20 to 22, 27 to 30, 91 to 96, and 102 to 104, stepped through detailed claim charts for a single select code and showed that it had all the enumerated capabilities. And they said petitioners have stated this claim chart, relying on their expert testimony, and we agree with it. So, it's precisely the opposite. So, if Claim 9, would you agree that Claim 9 requires a single select code? It says exactly one select code, and there is some... And if the comprising language doesn't mean you could have more than one select code. And the Board never found that. So, you heard me asking Mr. Molitor, as I said, I was under the impression that there was an argument that Ovadia, at least, did contain a code that was capable of performing all the functions of a select code. Yes. Both Nick Berger and Ovadia, the Board found, based on substantial evidence, had a single code that performed all those capabilities. In Nick Berger, it is the customer account number on the printed coupon selection list. In Ovadia, it is barcode indicia 42, and this is important, in the embodiment where it contains user information, which Nick Berger teaches is one embodiment of bar indicia 42. And so, that one performs all four of those functions. Where in the Board's opinion do they discuss Ovadia satisfying all four requirements of a select code? That would be at, for the 445 patent, would be at 27 to 30. You'll see the claim, and they have a claim chart, and they say petitioner relies upon Dr. Lewis' testimony. And they have the claim language, and then they show that Ovadia has teachings corresponding to all the claim language, and that goes all the way through to 30. Barcode 42. I'm sorry? Yes. Ovadia 42. Right. And so, Ovadia 42 has, when it has user information incorporated into the code, it also provides indicia for the discounts and allows the tracking and reading, uniquely identifies the vehicle, and it uniquely identifies either the individual discounts or the common discounts. It has all the claims, and the key is nowhere in their brief, certainly not in their opening brief. Do they ever address these findings? Do they ever show they're not supported by substantial evidence? They make arguments. Maybe I'm wrong, and my hearing has totally failed me, but I heard Mr. Molitor make the argument that the board made no such finding that you're saying the board made. The board absolutely made it. So, I mean, there's a disconnect between what he's saying and what you're saying. Well, he didn't say. Well, that he can't be right. Yes. Right. That's absolutely right, Your Honor. I would just say I'm showing you exactly in the opinion they made those findings. And so the reply brief makes arguments about the magnetic stripes, coupon index numbers, customer cards. Those are all off the mark. They don't address the specific embodiments in both Nick Berger and Ovadia that the board mapped to the claim limitations in painstaking detail. So they're just off the mark. And those address more the argument they've now abandoned that you can have more than one code. I'd like to ask you a question on page 29 and claim chart and talks about the select code uniquely identifying the vehicle such that the select code can be selectively deactivated. Where is it taught that that is referring to the barcode 42? Yeah, the barcode 42 is, well, he's talked about earlier in 28 that brochure 30 describes the select code is this barcode indicia, which identifies in machine readable code the brochure title, which is readable by the system. And it goes on to say that that in one embodiment, it may also identify the user information, name and address of the person and household. So 42 is specific to the brochure. So it's unique to that brochure. And when it's combined with the user, so it can be you can have a standardized vehicle. And so this is just the brochure title. But when in the embodiment, when 42 is also contains the user information, simply scanning that one select code gives you the information that allows all the unique tracking of the claim. And so I think that's that's very clear. And again, I think certainly substantial evidence that would address that. If I understood it correctly, the board was of the view that both Nick Berger and Ovadia anticipated. That's right. Both of them. So if either one of them does. That's correct. That's correct. You still win. Yes, we do. And there's no dispute, for example, Ovadia may have a postal code number 44, a different code, but that's not a select code. If only they've identified a single select code in Ovadia and in Nick Berger that performs all the enumerated capabilities. I'd also like now to address the selective deactivation point. And and again, all of these claims only affect claims nine and 15. They have not appealed the board's rulings that the other claims lack written description support. The board properly found. That the claim preamble is not limiting and also alternatively, that it is irrelevant to anticipation. And the preamble merely states an intended use for the claim discount vehicle. And you can see that the language on which they rely, which is, quote, tracking and processing, unquote, discounts, quote, during the checkout process, unquote, actually modifies the unclaimed data processing system, not the discount vehicle. So it can't state more than an intended use. Moreover, the preamble does not recite any essential structure or capabilities of the code that are not in the body. The body states a complete invention and it does not refer back to any antecedent matter in the preamble to define or limit the claims. I would also point out that the the board properly construed the phrase tracking and processing discounts during the checkout process to apply to to refer to applying the discounts during checkout, not to selective deactivation. And there's specification support for that as well. I would also add that the claim language forbids AMS's interpretation. The claim uses the parallel phrase during checkout to modify when talking in relation to reading and tracking the vehicle and the purchases, because there it serves a clear purpose, because the code has to supply the information so that the discounts can be applied during checkout. And it must be in a format readable by the checkout scanner. But it omits that during checkout language from the selective deactivation clause, because it would make no sense there. That clause is just stating a capability of an ordinary barcode and what can be just a paper vehicle. And all that capability is uniquely identifying the vehicle, quote, so that said select code can be selectively deactivated. It doesn't say anything about deactivated during checkout. And it would make no sense, because the deactivation of the discount for future transactions has nothing to do with the present checkout process that they say this has to occur during. Well, it could occur during checkout, right? Theoretically, yes. Selectively deactivation, you could have one stop shopping there, haven't you? Well, you could, but the claim doesn't require it to be within checkout. And I'm just saying it wouldn't make any sense, because also a capability of identifying the vehicle doesn't really have any effect or bearing on the timing of when the unclaimed computer deactivates the promotion. The specification also makes this very clear. Appendix 621-7, column 7, 18 to 21, says the checkout is completed by providing the customer the discounts found on the vehicle and storing the data collected during the scanning operation. Nothing about selective deactivation. It goes on at column 10, 20 to 24, to say once the vehicle is scanned and discounts applied, the computer may thereafter deactivate the promotion. So that means they're after checkout, and that's what the board found. And even if there were ambiguity, we submit there is none. The requirement that the claim as a whole have the broadest reasonable interpretation means that the board properly rejected AMS's interpretation of the preamble as limiting. My colleague did not address the CBM eligibility. I think that's quite clear. They didn't contest the board's application of the financial product or service requirement. They didn't raise unwired planet after it was decided. Unwired planet is irrelevant, because it invalidated two prongs of the board's former test, but did not invalidate the prong that the board relied on. Here, the financial in nature prong. And these are quintessential CBM patents. They deal and claim activities relating to the promotion of and price discounting of sales of retail products, which are financial transactions. And they don't recite, as the board find, any technological development. It's all conventional barcode scanners, a generic computer, existing software. It's not a technical solution to a technical problem. And simply facilitating a business solution of overcoming the problems with individual coupons and the physical handling of them by using a general computer does not suffice. So unless the court has any more questions on jurisdiction, I'll rest on that. Thank you. Mr. Molitor, do we still have some rebuttal time? Thank you, Your Honor. Mr. Molitor, let's pick up that last discussion. You didn't raise the CBM issue in your opening statement. Can we assume you're no longer pursuing that issue? Your Honor, no. We still believe that this is not a CBM-eligible set of patents because of unwired planet and secure access, which were decided after all of our briefs had been submitted. And back in that kind of time frame, the board was— Well, in light of those two cases, do you still think you want to make your argument? My argument is that the petitioner never made the proper arguments and relied on the board's broad interpretation of what is CBM-eligible. The question is not whether the petitioner raised the argument. The question is whether or not the board bought it. We're reviewing the final decision of the board, not the petition. Your Honor— So you look in the board's decision, they cite secure access, right, which isn't around anymore. But it did the same office that unwired planet did as to the no-no words. And the no-no words don't appear anywhere in the decision. And we review only the final written decision, right? Correct. So where does that leave you, sir? That leaves us just, again, as I say, I just was bringing up the point that we believe the petitioner didn't fulfill their obligation in the original petition. The board took a much broader— I do understand we are not reviewing the petition. I understand, Your Honor. However, I also would like to make a comment on the thereafter word that counsel just brought up is that therefore means after checkout. And in our briefs and so forth, thereafter just means I cannot do a selective deactivation until after the discount has been applied. Are you referring to language in the specification? Correct. Correct. And that's all it is. It just thereafter doesn't mean, you know, down the road in a week or a day or whatever. It just means I have to apply the discount first, and then the selective deactivation is after that. Again, just for the record, one of the issues you identify in your statement of issues is whether the AIA proceedings are unconstitutional. I take it you're no longer pursuing that. No, we're no longer. In our last brief, we— Okay. Yes. I just want to know what we need to deal with. Don't worry about that one. Okay. Thank you. However, what I'd also like to bring out is, you know, neither Nick Berger or Ovadia do the selective deactivation during the checkout. And again, that goes back to the preamble of all of the four steps as outlined in the claims must happen during checkout. So, to review, the select code—and again, I guess back to what it is in a select code. We talked about the four distinct functions. I go back to the board in its final written decisions that, again, it decided and found as fact that both Nick Berger and Ovadia required more than one code. That was their conclusion. And that— Well, it may have required more than one code, but was there a code that performed all four functions? That's the question. That is the question. And your adversary pointed to parts of the board decision where Browns was there to say yes, at least with regard to Ovadia. It's got, in that discussion, that number 42 satisfies all four functions. I disagree, as the board came down to the conclusion that it requires the Ovadia's initial 41, so that it required both. And, as I say, in addition that the select of deactivation doesn't occur during— Where does it expressly say it requires 41 to satisfy the four functions? In— What page? Appendix 25 and Appendix 107. Where exactly on page 25? And we're talking about Ovadia here? 25 is Nick Berger— I'm talking Ovadia. Let's talk about Ovadia. It's Appendix 107. 107. And I quote, the transitional term comprising renders the claim open-ended such that the claim does not preclude the presence of other codes such as Ovadia's initial 41. Sorry, where are you reading this? But that doesn't deal with the question of whether or not 42 meets the four limitations. And we maintain that it does not. I know you maintain it, but the adversaries pointed at claim charts and whatnot that show it does. No? Okay. On Appendix 107 on the bottom of the page under select codes— But that's the same point, which is to say, yeah, I mean, you can have other codes, and Ovadia initial 41 is not a select code. Right? Correct. So who cares if Ovadia's got a bunch of codes that are not select codes? The question is, does it have one— One code that does all four. One select code that does all four. All four functions. And it sure looked to me like, I mean, showing us on page 28, it's bar code 42 does the trick. Meets the four limitations. So we really don't care how many additional codes that perform less than all four functions. Correct. That's just not what we're talking about. Correct. We need one code that does all of the four functions. In order for the board to get where it got, it has to have disagreed with you because it's not going to have anticipation based on Ovadia unless there is one code in Ovadia that meets all four of the select code parameters. Correct. But in the final written— Then it's a matter for us to decide whether substantial evidence supports what the board said Ovadia teaches. Agreed. But in the final written decisions, the board, I believe, changed its arguments and said Nick Berger and Ovadia use the multiple codes in the way that it anticipates is back to the comprising argument that says it's the open-ended. I hear what you're saying. Yeah. And that's her point. I think we have your argument unless you have a wrap-up sentence that you want to provide. As I mentioned, the four distinct functions of the under proper claim construction, comprising does not negate the claims. And also, we talked about the preamble is limiting because I truly believe it gives meaning to the claims that it defines what must occur during checkout process. Okay. I think the court heard that. We thank counsel and the case is submitted.